UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER GAIR HARRINGTON, | Case No. 26-cv-01889-JST |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR A PRELIMINARY INJUNCTION** |
| SERGIO ALBARRAN, et al., | Re: ECF No. 6 |
| Defendants. | |

This case presents a simple question: after a decision by a neutral judge at a bond hearing to release an individual from custody, imposing a bond as a condition of release but no other conditions, may law enforcement officers unilaterally remand the individual to custody without providing a further hearing? Because the answer is unequivocally "no," the Court grants Petitioner Spencer Harrington's application for a preliminary injunction releasing him from the custody measures imposed by Immigration and Customs Enforcement ("ICE")—ankle monitoring and enrollment in ICE's Intensive Supervision Appearance Program ("ISAP")—absent a further hearing on whether those measures are appropriate.

I.      BACKGROUND

Harrington, a citizen of Canada, has resided in the United States since October 16, 2019, when he entered on a nonimmigrant visitor visa. ECF No. 1 ¶ 1; ECF No. 5-2 at 2. He was arrested on December 18, 2025 at an interview with the U.S. Citizenship and Immigration Services to adjust status to a lawful permanent resident, based on his marriage to a U.S. citizen. ECF No. 1 ¶¶ 1–2. Harrington was transferred to the California City Detention facility and remained there until he was released on a $10,000 bond by an immigration judge ("IJ") on February 3, 2026. *Id*. ¶ 3.

When ordering Harrington's release without any additional restrictions or monitoring, the IJ made the following findings:

> Respondent is not a danger in light of the Superior Court's Order terminating Respondent's case.  Respondent's probation officer in his state case requested early termination of probation, and the Superior Court granted the officer's request.  Respondent a flight risk [sic], but are mitigated [sic] by his substantial ties to the community.  He is married to a [U.S. citizen], and owns a home in the U.S.  He has significant family ties in light of the letters of support written on his behalf.

ECF No. 1-2 at 2.  Nonetheless, ICE placed an ankle monitor on Harrington and enrolled him in ISAP.  ECF No. 1 ¶ 4.  Harrington has never missed an immigration hearing, check-in, or appointment, and has never violated his bond.  ECF No. 4 at 8.

Harrington "attests that the monitor is causing chafing, pain and mental and physical harm."  ECF No. 4 at 13; ECF No. 4-3 ¶¶ 14–18; *see also* ECF No. 4-1 ¶ 9; ECF No. 4-2 at 2.  He states that "people see the ankle monitor and assume I am a criminal.  I feel so self-conscious about wearing it that I don't even want to leave the house."  ECF No. 4-3 ¶ 15.  Furthermore, the ankle monitor causes him anxiety because "they are known to be very faulty" and he fears that if it loses battery or service he will be arrested again by ICE.  *Id*. ¶ 16.  The ankle monitor prevents Harrington from running and jogging by chafing his leg and causing it to swell, which cuts him off from a "crucial" tool for maintaining his physical and emotional health.  *Id*. ¶ 17.  It also strains his marriage because it prevents him from returning to normal daily life with his wife.  *Id*. ¶ 18.  Due to his monthslong detention, Harrington suffers from PTSD and depression, exacerbated by the ankle monitor, ISAP supervision, and the ensuing restriction of his movements to a radius in Northern California.  *Id*. ¶ 16; ECF No. 4 at 12.

Harrington filed this habeas petition, through counsel, on March 4, 2026.  ECF No. 1.  On March 6, he filed a motion for a temporary restraining order ("TRO") and a motion for an order to show cause.  ECF No. 4.  The government filed an opposition on March 7.  ECF No. 5.  On March 9, this Court issued an order denying the TRO but ordering the government to show cause why a preliminary injunction should not issue.  ECF No. 6 at 1.  That order gave the government the option of submitting a new opposition or resting on the opposition filed on March 7.  *Id*. at 3.  The

United States District Court
Northern District of California

government opted to rest on the March 7 brief.  ECF No. 7.  Harrington did not file a reply.  The Court held a hearing on March 23, 2026.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

The Court applies a familiar four-factor test on a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  Where the plaintiff does not establish a likelihood of success on the merits but merely establishes "serious questions going to the merits," a preliminary injunction may still issue if the plaintiff can show that the balance of hardships "tips sharply in [his] favor," irreparable injury is likely, and the injunction is in the public interest.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

The government argues that courts should not grant preliminary relief where the relief sought is the same that would be granted after a favorable adjudication of the merits, because "[j]udgment on the merits in the guise of preliminary relief is a highly inappropriate result."  ECF No. 5 at 7 (quoting *Mendez v. ICE*, No. 23-cv-829, 2023 WL 2604585 at *3 (N.D. Cal., Mar. 15, 2023) and *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992)).  Specifically, the government argues that "[t]he only appropriate relief sought by Petitioner in the motion for a TRO, i.e., release from custody, is the same ultimate relief Petitioner seeks in the underlying habeas petition" and is therefore "effectively final judgment on the merits of the habeas petition."  ECF No. 5 at 12–13.

The government has it backwards.  In fact, "[a] preliminary injunction *is appropriate* when

United States District Court
Northern District of California

3

United States District Court
Northern District of California

it grants relief of the same nature as that to be finally granted" after trial.  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (emphasis added) (citing *De Beers Consol. Mines v. United States,* 325 U.S. 212, 220 (1945)); *see also Lane v. Dep't of Corr.*, No. C18-5666-RBL-TLF, 2018 WL 5303308, at *3 (W.D. Wash. Oct. 1, 2018), *report and recommendation adopted*, No. C18-5666-RBL-TLF, 2018 WL 5295810 (W.D. Wash. Oct. 25, 2018) ("A preliminary injunction is only intended to give intermediate relief *of the same character* that will be granted should the party seeking the injunction succeed on the underlying claims." (emphasis added)); *Rouser v. White*, 707 F. Supp. 2d 1055, 1071 (E.D. Cal. 2010) (noting that "a preliminary injunction is only awarded where plaintiff has shown that he is likely to receive such a permanent injunction after trial").  Were the law otherwise, a Court could never grant preliminary relief in a habeas case.  *See* ECF No. 5 at 12–13.  Preliminary relief in a habeas case is appropriate notwithstanding the fact that both preliminary relief and the habeas petition itself seek the petitioner's release from custody.

## IV.   DISCUSSION

### A.   Likelihood of Success on the Merits

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States."  The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody."  *Prieser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Harrington argues that his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution are violated because the government is subjecting him to continued custody and control that was not found necessary by a neutral immigration judge in his bond hearing.  ECF No. 4.  The due process clause of the Fifth Amendment "applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  The Court finds that Harrington has shown a high likelihood of success on the merits of this claim.

Courts around the country have concluded that petitioners' due process rights were

violated in similar circumstances. For instance, in *A.B.D. v. Wamsley*, Petitioner A.B.D. was briefly detained in the Tacoma Detention Center and then released with a GPS tracking monitor on his ankle. No. 6:25-CV-02014-AA, 2026 WL 178306, at *2 (D. Or. Jan. 22, 2026). When he complained at his first ISAP appointment that the monitor was hurting him, officers told him there was nothing they could do and made no attempt even to adjust the monitor. *Id*. At his second appointment, he explained that "when he 'wear[s] tall work boots that come up to [his] calf,' the monitor turns his leg red 'and hurts terribly,'" but was again told that it would not be removed until ICE gave permission, which would probably not happen for six months. *Id*. A.B.D. struggled to travel to his check-in appointments because he had no car, and the ISAP phone appointments were equally difficult because they required him to remain home waiting for a call that could come any time between 6:00 a.m. and 7:00 p.m. *Id*. at *3. Another petitioner, C.C.S., received an ankle monitor after a brief detention, which "is painful and has made it hard for [her] to live [her] daily life." *Id*. Analyzing the *Mathews v. Eldridge* factors, the court found that the petitioners' ongoing custody violated Fifth Amendment due process in the absence of notice and a hearing concerning the appropriateness of the intensive supervision measures. *Id*. at *9–10.

In *Batz Barreno v. Baltasar*, the petitioner was released from detention pursuant to an IJ's order granting bond and "expressly declin[ing] to impose additional conditions of release on Petitioner." No. 25-CV-03017-GPG-TPO, 2026 WL 120253, at *1 (D. Colo. Jan. 15, 2026). Nonetheless, ICE imposed additional conditions, including "'requiring her to wear an ankle monitor' and comply with various reporting requirements." *Id*. The court emphasized the fact that while the petitioner had received a hearing on the necessity of *detention*, the government had not met its burden to show at that hearing that continued custody in the form of ankle monitoring and reporting requirements was justified. *Id*. at *2. "As such, continued custody of Petition is not consistent with due process and, therefore, unlawful." *Id*. The court ordered the petitioner's release from custody. *Id*. at *3.

Likewise, in *N- N- v. McShane*, the court found that ICE had violated the petitioner's due process rights in imposing additional conditions to the immigration judge's order releasing him on bond. No. CV 25-5494, 2025 WL 3143594, at *1 (E.D. Pa. Nov. 10, 2025). As here, the IJ held a

custody redetermination hearing and found that N-N- was not a danger to the community or a flight risk, releasing him on $3,000 bond. *Id*. Also as here, ICE unilaterally imposed ankle monitoring and participation in ISAP, requiring the petitioner to wear an ankle monitor 24/7, charge it for 2–3 hours daily with a battery preventing walking, prevent it from getting wet, avoid running on treadmills, attend in-person office and home visits, and secure advance permission before leaving Pennsylvania, New Jersey, or Delaware. *Id*. Finding that "N- N-'s ankle monitor, removable solely at the discretion of ICE, violates Due Process," the Court ordered the government to "remove electronic surveillance, supervision requirements, and any other condition that goes beyond the [IJ's] order." *Id*. at *1, 4.

Accordingly, as multiple sister courts have done on similar facts, the Court finds that the government is violating Harrington's due process rights by subjecting him to ankle monitoring and ISAP supervision without notice and a hearing to determine whether those measures are warranted.

### 1.    Custody

Federal courts have the statutory authority to grant writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Custody" is not limited to physical imprisonment and a court may afford habeas relief to an individual, who, as here, is subject to "restraints not shared by the public generally," including parole and other forms of release accompanied by restrictions on an individual's freedoms. *Jones v. Cunningham*, 371 U.S. 236, 240 (1963); *see also Munoz v. Smith*, 17 F.4th 1237, 1241 (9th Cir. 2021) (quoting *Jones* and holding that custody "encompass[es] circumstances in which the state has imposed 'significant restraints on [a] petitioner's liberty'"); *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016) (quoting *Jones* and explaining that restrictions that "require [the petitioner's] physical presence at particular times and locations, both for community service and court appearances," and which "carry with them the potential for future adverse consequences during the term of the sentence, including arrest for noncompliance and modification or revocation of the conditional discharge" constitute custody because such restrictions are "'not shared by the public generally'").

Faced with conditions identical to those imposed here, multiple courts have concluded that the requirements of "custody" are easily satisfied.  *See A.B.D. v. Wamsley*, 2026 WL 178306, at *8 (concluding that "by these 'intensive supervision' and monitoring measures, which carry with them the potential for future adverse consequences for noncompliance, ICE controls Petitioners' daily lives and thus subjects them to significant restraints that are not shared by the public generally"); *Batz Barreno v. Baltasar*, 2026 WL 120253, at *2 ("Petitioner remains in custody through the conditions of release imposed by ICE."); *N-N- v. McShane*, 2025 WL 3143694, at *3 (finding the argument that the use of an ankle monitor did not constitute custody "not . . . persuasive in the slightest"); *Orellana Juarez v. Moniz*, No. 25-cv-11266-MJJ, 2025 WL 1698600, at *4 (D. Mass. June 11, 2025) (finding that "conditions of release" that include a 24/7 GPS ankle monitor, enrollment in ISAP, "regular reporting, allowing ICE to enter his residence at home visits, a curfew of 10 PM, and geographic restrictions" are "analogous" to the parole conditions in *Jones*).

Harrington is required to appear at particular places and times to comply with ISAP supervision.  He is restricted from leaving a radius within Northern California and must wear an ankle monitor around the clock.  As many other courts have repeatedly found, these conditions satisfy the definition of "custody" laid out by *Jones*.

Although the government first avers that it will "reserve" the issue of whether an ankle monitor and enrollment in ISAP supervision constitute "custody" for habeas purposes, ECF No. 5 at 5 n.1, it later argues that Harrington is unlikely to succeed on the merits because "[a] habeas petition challenges the custody of an individual, not their release conditions" and "does not empower courts to manage ICE supervision programs."  ECF No. 5 at 8 (quoting *Ba v. Lyons*, No. 3:25-cv-2871, 2026 WL 218936, at *1 (S.D. Cal. Jan. 27, 2026)).  Although *Ba* does appear to hold that requirements to "wear a GPS monitoring ankle bracelet, attend frequent in person office visits, and not travel outside 75 miles without [the government's] permission" did not constitute custody, 2026 WL 218936, at *1–2, the Court is not persuaded by *Ba*'s reasoning.

The court in *Ba*—and the government in opposing the petition here—relies on *Munoz v. Smith*, which denied a habeas petition arguing that release conditions including sex offender

registration, fees, and ankle monitoring amounted to custody.  17 F.4th at 1246.  But *Munoz* is distinguishable.  In that case, the Ninth Circuit noted, without definitively resolving the issue, that the sex offender registration and tracking requirements "could be regarded as collateral consequences of conviction," analogous to the loss of the right to vote, "not 'custodial' requirements."  *Id*. at 1243, 1246.  By contrast, the conditions imposed on Harrington were unrelated to any conviction.  The *Munoz* court also drew an express contrast with more burdensome measures that could rise to the level of custody, including requirements to register in person with the police every three months and appear in person at a registration site before leaving home for more than seven days, traveling internationally, or changing residence, employment, or contact information.  *Id*. at 1244.  Harrington, unlike the petitioner in *Munoz*, must appear at regular supervision check-ins and may not travel outside of a narrow radius in Northern California.  *Cf. id*. at 1245 ("The electronic monitoring . . . does not limit [Munoz's] physical movement, nor does it require him to go anyplace.").  In short, *Munoz* does not undermine but rather supports the view that the conditions imposed by ICE here constitute custody.

### 2.      Procedural Due Process

The imposition of ankle monitoring and ISAP supervision was not accompanied by any procedural protections.  After an IJ determined that Harrington was not a danger, that any flight risk was mitigated by his substantial ties to the community, and that he should be released from detention on bond and without further conditions, ICE made the unilateral decision to impose ankle monitoring and ISAP supervision "for a minimum of six months."  ECF No. 1-2 at 2; ECF No. 4-3 ¶ 13.

The government argues that "the record is unclear whether the [IJ] found [Harrington] to be a flight risk" because the IJ did find that Harrington was a flight risk, but that the risk "was mitigated, for purposes of keeping Petitioner confined to a detention facility."  ECF No. 5 at 8. There are two problems with the government's argument.  The first is that there is no basis in the record to conclude that the IJ's determination that any flight risk had been mitigated was cabined to "purposes of keeping Petitioner confined to a detention facility," whatever that means. Relatedly and more broadly, the IJ declined to impose the release conditions unilaterally imposed

by ICE. This can only mean either (1) that the IJ specifically determined that such conditions were unnecessary or (2) that she did not consider such conditions. In either event, no neutral arbiter has considered the conditions imposed by ICE and deemed them necessary, so ICE's decision to impose ankle monitoring and ISAP supervision was subject to no procedural protections at all.[1]

In deciding what procedural process is due, the Court considers the factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).[2]

As other courts have found, all three *Mathews* factors support requiring a hearing before a noncitizen released from immigration detention can be subject to custody in the form of ankle monitoring and ISAP supervision. *See A.B.D. v. Wamsley*, 2026 WL 178306, at *10.

The first *Mathews* factor, the private interests at stake, are undeniably substantial. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Courts also emphasize the increased salience of the liberty interest of someone like Harrington, who spent six years living freely in the United States and forming all of the emotional, social, and professional attachments that come with a free life. *See, e.g.*, *J.A.M.C. v. Albarran*, No. 25-CV-09649-WHO, 2025 WL 3268816, at *4 (N.D. Cal. Nov. 24, 2025); *Emilio E. M. v.*

---

[1] At the hearing on this motion, the government took the extraordinary position that whenever an IJ declines to impose a condition of release, but does not affirmatively *state* that she is not imposing it, ICE is then free to impose such a condition on its own. This order rejects that argument.

[2] The applicability of the *Mathews v. Eldridge* test to bond hearings in the immigration detention context is not firmly settled in this circuit. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022) ("assum[ing] without decid[ing] that *Mathews* applies" to determine whether due process requires a bond hearing for certain detained noncitizens). However, courts within this district have uniformly applied that test in deciding whether noncitizens are entitled to bond hearings. This Court follows suit.

United States District Court
Northern District of California

*Chestnut*, No. 1:25-CV-02054-SKO (HC), 2026 WL 395634, at *3 (E.D. Cal. Feb. 12, 2026). Harrington argues that his liberty interest in remaining free from custody has been significantly diminished by the ankle monitor and ISAP supervision, which cause him great stress, harm his social relationships, including his marriage, prevent him from exercising for his mental and physical health, and leave him unwilling to go out in public because of the humiliation of being perceived as a criminal. ECF No. 4-3 ¶¶ 14–18. Moreover, he is prevented from traveling outside a radius determined by ICE in Northern California. ECF No. 4 at 12.

The risk of erroneous deprivation through the procedures used here is also great, because no procedures were used at all: the ankle monitor and ISAP were imposed pursuant to ICE's unilateral discretion. *See A.B.D. v. Wamsley*, 2026 WL 178306, at *10. "The risk of erroneous deprivation becomes overwhelmingly high when immigration officers act with unrestrained discretion to detain noncitizens without an individualized showing of why detention is warranted or an effective process for noncitizens to challenge the exercise of such discretion." *Pichardo Medina v. Hermosilla*, No. 3:25-CV-02233-MC, 2025 WL 3712271, at *4 (D. Or. Dec. 22, 2025).

The third *Mathews* factor, the administrative burden to the government of providing additional protective procedures, also favors Harrington. The effort and cost of an additional hearing before an IJ to consider the appropriateness of ankle monitoring and ISAP supervision is "minimal." *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Moreover, the administrative cost of holding such a hearing is offset by the high personnel and resource costs of the ankle monitoring and ISAP supervision, which an IJ may deem not to be necessary. *A.B.D. v. Wamsley*, 2026 WL 178306, at *10 (noting that such monitoring programs are costly).

Because Harrington has established that he is in custody and that procedural due process requires him to be afforded a hearing on the appropriateness of that custody, he has established a high likelihood of success on the merits.

## B.    Irreparable Harm

Harrington suffers irreparable harm in the absence of a preliminary injunction. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427

10

United States District Court
Northern District of California

U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

Moreover, Harrington attests that every day with the ankle monitor causes chafing, pain, humiliation, and other mental and physical harm. It interferes with his ability to jog and has harmed his social relationships. The government raises two primary arguments against Harrington's showing of irreparable harm. First, it points out that the depression and PTSD which Harrington suffers resulted directly from his detention by ICE. ECF No. 5 at 9. This does not, of course, mean that the ankle monitor does not *exacerbate* those mental health conditions. Second, the government argues that Harrington could alleviate his symptoms by taking anti-depressant medication. *Id*. at 9–10. The suggestion that mental illness is not a cognizable form of harm because treatments exist that may alleviate it is frivolous and not worthy of consideration. The constitutional injury alone is sufficient to establish irreparable harm, but Harrington has also established a variety of other harms that are irreparable and compounding daily.

### C.    Balance of the Equities and Public Interest

The balance of the equities and the public interest tip sharply in Harrington's favor. These factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts routinely find that the balance of the hardships and the public interest are harmed "by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law."); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

The government argues that the public interest in "efficient administration of the immigration laws" is "weighty" and "of the highest order," ECF No. 5 at 11, but it the government can enforce the laws against Harrington whether they subject him to monitoring or not. The

11

government provides no reason to believe that continued monitoring is necessary to the ultimate enforcement of the immigration laws.

Should an IJ determine at a hearing that the monitoring measures imposed here are necessary, ICE will of course be free to reimpose them.  In the meantime, Harrington has no criminal history and was not in removal proceedings when he was detained.  He entered the United States lawfully and is pursuing lawful status through the appropriate channels.  He is highly incentivized to continue to comply with all applicable requirements because he has a pending application for an adjustment of status based on his approved I-130 spousal visa petition.  In short, the great harm to him from an ankle monitor and ISAP supervision are not counterbalanced by any apparent benefit to the public interest.

### D.    Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified).  The government does not argue that the Court should require Harrington to give security, and the sees no no plausible argument that it will be harmed by a requirement that it hold a hearing before imposing the contested conditions.  In addition, Harrington has already paid a bond of $10,000 which he attests he cannot afford to lose.  ECF No. 4-3 ¶ 20.  Accordingly, Court finds that no security is required here. *See also Diaz v. Kaiser*, 2025 WL 1676854, at *3.

## CONCLUSION

For the reasons explained above, Harrington's motion for a preliminary injunction is granted.  The Government is required to release Harrington from custody, relieving him of the ankle monitor and ISAP monitoring.  The government is prohibited from remanding him to custody, including by imposing the ankle monitory and ISAP monitoring conditions, without

notice and a hearing to determine whether a material change of circumstances justifies any renewed measures.[3]

**IT IS SO ORDERED.**

Dated:  March 23, 2026



_____
JON S. TIGAR
United States District Judge

---

[3] Citing *Doe v. Garland*, the government argues that all respondents except for the petitioner's immediate custodian should be struck because only that custodian is properly named by a habeas petition.  ECF No. 5 at 11–12 (citing 109 F.4th 1188, 1195 (9th Cir. 2024)).  Harrington does not oppose this request and the Court is prepared to grant it.  However, the government does not identify who the petitioner's immediate custodian is and which defendants should be struck.  The Court therefore invites the government to submit a renewed motion to strike certain defendants, identifying them with particularity.

13

United States District Court
Northern District of California